## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| JEANETTE E. KANODE, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:08-0929 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered July 17, 2008 (Document No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 12 and 13.) and Plaintiff's Reply. (Document No. 14.)

The Plaintiff, Jeanette E. Kanode, (hereinafter referred to as "Claimant"), filed applications for DIB on December 27, 2005, and for SSI on November 30, 2006 (protective filing date), alleging disability as of July 5, 2005, due to chronic renal failure, degenerative disc disease, nerves, carpal tunnel syndrome, chronic back pain, and pancreatitis. (Tr. at 19, 37, 62-64, 69, 79, 515.) The claims were denied initially and upon reconsideration. (Tr. at 53-55, 58-60, 516-18, 521.) On November 20, 2006, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 52.) The hearing was held on June 7, 2007, before the Honorable Karen B. Peters. (Tr. at 523-77.) By decision

dated November 6, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 19-35.) The ALJ's decision became the final decision of the Commissioner on May 22, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 6-10.) Claimant filed the present action seeking judicial review of the administrative decision on July 17, 2008, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520©, 416.920©. If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2007). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the alleged onset date, July 5, 2005. (Tr. at 21, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of "back/neck pain, degenerative disc disease, post bilateral carpal tunnel surgeries 2006, gallbladder surgery 2005, depression, anxiety, and gastric illness." (Tr. at 22, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 26, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform sedentary level work as follows:

> [C]laimant has the residual functional capacity to perform sedentary work, or work which is generally performed while sitting down and does not require lifting in excess of ten pounds. Additionally, the claimant has mild reduction in use of hands for repetitive fine manipulation/repetitive work; occasionally balance, stoop, kneel, crouch and crawl; and never climb. The claimant's mental impairment impacts to the extent that she has moderate reduction in concentration defined as limiting her to simple, non-complex job tasks; and no work with the public.

(Tr. at 27, Finding No. 5.) At step four, the ALJ found that Claimant could not return to her past relevant work. (Tr. at 33, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a bench worker and parts inspector, at the sedentary level of exertion. (Tr. at 34, Finding No. 10.) On this basis, benefits were denied. (Tr. at 34, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying

the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on May 11, 1960, and was 47 years old at the time of the administrative hearing, June 7, 2007. (Tr. at 33, 37, 62, 69, 555.) Claimant has a ninth grade education and a generalized equivalency diploma, and is able to communicate in English. (Tr. at 33, 529.) In the past, she worked as a certified nursing assistant, residential care aide, greenhouse worker/crafts demonstrator, teacher's aide, and delivery driver. (Tr. at 33, 570-71.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence

because the ALJ erred in finding that Claimant's bilateral carpal tunnel syndrome, a severe impairment, resulted in a mild as opposed to a moderate reduction in the use of her hands for repetitive fine manipulation and repetitive work. (Document No. 12 at 3-4.) Claimant notes that at the administrative hearing, the VE identified only unskilled sedentary jobs in response to the ALJ's hypothetical questions. (Id. at 4.) Claimant therefore asserts that because Social Security Ruling 96-9p indicates that most unskilled sedentary jobs require good use of the bilateral hands and fingers, the issue of the degree of limitation resulting from her bilateral carpal tunnel syndrome is dispositive of whether she is entitled to benefits. (Id. at 3-4.) Claimant asserts that the VE testified that a moderate limitation from carpal tunnel syndrome would impact Claimant's ability to perform sedentary work. (Id. at 4.) She further asserts that her treating neurologist, Dr. Tahir Rana, noted that her carpal tunnel condition was of a moderate level of severity (Id. at 3; Tr. at 435.), and that the physical residual functional capacity assessment completed by the state agency reviewing physician, Uma Reddy, M.D., indicated moderate limitations resulting from Claimant's carpal tunnel syndrome. (Id.; Tr. at 444.)

Assessing Claimant's contention, the Commissioner responds that although Drs. Rana and Reddy assessed moderate limitations resulting from Claimant's carpal tunnel syndrome, Claimant failed "to acknowledge that her condition improved significantly in less than twelve months following carpal tunnel release surgeries." (Document No. 13 at 10.) The Commissioner asserts that Claimant completed numerous handwritten reports, which documented numerous activities, which support the ALJ's finding of only a mild reduction in the use of her hands. (Id. at 11.)

In Reply, Claimant asserts that the Commissioner "raises the entirely new argument that even if the [C]laimant has a moderate impairment that she has not shown that the impairment lasted more than twelve months." (Document No. 14 at 1.) Claimant contends that the ALJ did not make such a finding as a basis for denying benefits, and therefore, the Court is unable to make findings of fact for

the ALJ. (Id. at 2.) "The Commissioner's argument leaves the court in the untenable position of reviewing the evidence to determine if it supports a decision to deny benefits on a duration requirement finding which was never made by the Commissioner." (Id.) Claimant asserts that a medical note dated July 26, 2006, indicated that she had reported complaints associated with her carpal tunnel syndrome in excess of six months. (Id.) Therefore, her complaints dated back to at least January, 2006, and continued until at least December 7, 2006. (Id.) Respecting the handwritten forms she completed, Claimant asserts that she noted her difficulty in completing the forms. (Id. at 3.) Finally, regarding her activities, Claimant asserts that she was able to play tennis only for a few minutes before having to stop and that she experienced difficulty with her personal care activities. (Id.)

Analysis.

At steps four and five of the sequential analysis, the ALJ must determine the claimant's residual functional capacity for substantial gainful activity. "RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2007). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate

6

consideration to all of her impairments." <u>Ostronski v. Chater</u>, 94 F.3d 413, 418 (8th Cir. 1996).

The medical evidence of record reveals that on July 24, 2005, Claimant exhibited normal range of motion in all extremities. (Tr. at 235, 239, 243.) On July 30, 2005, it was noted that Claimant had good range of motion of all her extremities and that her motor and sensory functions were normal. (Tr. at 166.) Likewise, on October 13, 2005, it again was noted that she had good range of motion of all her extremities. (Tr. at 202.) A consultative report dated February 16, 2006, by Dr. Tahir I. Rana, M.D., evidenced a history of intermittent numbness or tingling in Claimant's hands and occasionally in her feet. (Tr. at 284.) Physical examination, however, revealed normal motor and sensory functions in the upper and lower extremities. (Tr. at 285-86.)  Dr. Tahir Rana recommended an EMG nerve conduction study. (Tr. at 286.)

The treatment notes from Dr. Tahir Rana reflect Claimant's complaints of numbness in her hands on February 27, 2006, though physical examination revealed normal motor and sensory function. (Tr. at 426.) Dr. Rana performed an EMG/NCS of Claimant's upper extremities on that same date, which demonstrated bilateral carpal tunnel syndrome of moderate degree on the right more than the left side. (Tr. at 435.) An x-ray report of Claimant's cervical spine, dated March 11, 2006, indicated Claimant's reports of numbness in her hands. (Tr. at 259, 425.) A physical exam on April 28, 2006, again revealed normal strength and sensory function in her upper and lower extremities, except for some mild give away weakness. (Tr. at 420.) Dr. Rana discussed with Claimant the possible medical and surgical treatment for her carpal tunnel syndrome, but Claimant opted for conservative management of her condition. (Tr. at 421.)

On May 12, 2006, Dr. Rogelio Lim, M.D., a reviewing physician, completed a form physical residual functional capacity assessment, and opined that Claimant was capable of performing light exertional level work. (Tr. at 320-27.) Dr. Lim acknowledged Claimant's carpal tunnel syndrome, right worse than the left, but noted that she exhibited normal motor function and strength and did not

identify any manipulative limitations (Tr. at 323, 325.) Dr. Lim noted Claimant's activities of daily living to include housework, cooking, grocery shopping with assistance in lifting, and playing tennis for a few minutes. (Tr. at 327.)

On July 17, 2006, Claimant complained to Dr. Tahir Rana of sharp pain in her hands and wrists, primarily when doing dishes or driving. (Tr. at 413.) Claimant requested that Dr. Rana refer her for carpal tunnel surgery. (Id.) Physical examination again revealed normal strength and sensory function. (Tr. at 415.)

Dr. Riaz A. Rana, M.D., noted in July, 2006, that Claimant had "been complaining of pain, tingling, [and] numbness in the hands for over six months." (Tr. at 343, 492.) Dr. Rana indicated that despite conservative measures, Claimant's symptoms had progressively worsened and that she experienced frequent numbness in the entire right hand during the day with discomfort up to her elbows. (Id.) Claimant reported no weakness or loss of grip. (Id.) Dr. Rana recommended right carpal tunnel decompression, which was performed on July 25, 2006. (Tr. at 342-43, 496.) On August 2, 2006, Dr. Riaz A. Rana noted that Claimant's carpal tunnel syndrome symptoms had improved following decompression on the right. (Tr. at 353.)

On September 29, 2006, Dr. Tahir Rana noted that the numbness and stiffness was gone from Claimant's right hand, that she could move her fingers better, and that she denied any soreness in the area of her incision. (Tr. at 409.) Nevertheless, Claimant complained that her right hand remained symptomatic. (Id.) Physical examination revealed normal strength and sensory functions. (Tr. at 411.) Dr. Rana advised that Claimant avoid heavy lifting and excessive typing on the computer. (Tr. at 412.)

Dr. Uma Reddy, M.D., a state agency reviewing medical consultant, performed a physical residual functional capacity assessment of Claimant on October 3, 2006. (Tr. at 441-48.) Dr. Reddy opined that Claimant was capable of performing work at the light level of exertion with unlimited

push and pull activities. (Tr. at 442.) Nevertheless, Dr. Reddy assessed moderate limitations in reaching in all directions, including overhead; handling; and fingering, as a result of neck pain and carpal tunnel syndrome. (Tr. at 444.) Dr. Reddy acknowledged, however, that Claimant did better following the decompression, that she took pain medications as needed, and that she was able to perform activities, including caring for herself, driving, and shopping. (Tr. at 446.)

On December 7, 2006, Claimant reported to Dr. Riaz Rana that she was extremely happy with the results of the right carpal tunnel decompression surgery and that the symptoms in the right hand had completely cleared. (Tr. at 484.) Claimant further reported, however, that the symptoms in the left hand had progressively worsened. (Id.) She indicated that her left hand stayed numb and that she had pain in her hand up toward her elbow. (Id.) Given the positive results on the right, Claimant elected to have decompression on the left, which was performed by Dr. Rana on December 7, 2006. (Tr. at 483-84.) On follow-up on December 14, 2006, Dr. Rana noted that Claimant was very happy and satisfied with the result of the left carpal tunnel decompression surgery. (Tr. at 481.)

Dr. Jeffrey A. Greenberg, M.D., conducted a neurological consultation on January 25, 2007, at which time Claimant reported complaints of neck and back pain, and reported that she had some improvement following her bilateral carpal tunnel surgery in 2006. (Tr. at 501.) Dr. Greenberg noted that Claimant was "looking to go on disability." (Id.) Physical exam revealed normal motor and sensory function of all Claimant's extremities. (Tr. at 502.) On February 2, 2007, Claimant reported to Dr. Michael Crews, D.O., that she experienced pain at the site of her carpal tunnel surgery. (Tr. at 450.)

In addition to the activities reported in the medical notes, Claimant reported that she helped out around the house and helped cook, that she was independent with her personal care, that she shopped for groceries and went to the library, that she could drive, and that she played tennis for a few minutes. (Tr. at 26, 101, 104, 559-60.) She also testified that she could peel potatoes. (Tr. at 102,

9

559.) Additionally, Claimant completed several hand-written forms without any assistance. (Tr. at 87-93, 100-07, 124-31.)

Relying on Dr. Tahir Rana's February 27, 2006, EMG/NCS report of moderate bilateral carpal tunnel syndrome and Dr. Reddy's October 3, 2006, assessment of moderate limitations in reaching, fingering, and handling, Claimant alleges that the ALJ erred in finding mild as opposed to moderate limitations resulting from Claimant's carpal tunnel syndrome. (Document No. 12 at 3-4.) The undersigned agrees with the Commissioner and finds that Claimant's argument fails to acknowledge that her bilateral carpal tunnel syndrome improved following the decompression surgeries. (Document No. 13 at 10.) As stated above, Claimant underwent decompression on the right on July 25, 2006, and decompression on the left on December 7, 2006. (Tr. at 342, 483, 496.) Dr. Tahir Rana's EMG/NCS report, therefore, preceded Claimant's surgeries and subsequent improvement in her condition. Claimant reported that she was very happy with the results of the surgeries. (Tr. at 481, 484.) The evidence fails to demonstrate any limitations resulting from her bilateral carpal tunnel syndrome following the surgeries, despite a one-time complaint of pain at the site of the incision in February, 2007. (Tr. at 450.)

Though Dr. Riaz Rana indicated that Claimant had complained of pain, tingling, and numbness in her hands for over six months prior to July 26, 2006, there is no evidence beyond the moderate assessments of Dr. Tahir Rana and Dr. Reddy to indicate that her symptoms were disabling during that time. (Tr. at 343, 492.) The scant evidence of record regarding Claimant's upper extremities for the period of time preceding July 26, 2006, indicated that Claimant exhibited full range of motion of all her extremities and that she had normal motor and sensory functions. (Tr. at 166, 202, 235, 239, 243, 285-86.) As of February 27, 2006, Dr. Tahir Rana characterized the bilateral carpal tunnel syndrome as moderate in severity, but on May 12, 2006, Dr. Lim failed to assess any manipulative limitations resulting from Claimant's bilateral carpal tunnel syndrome. (Tr. at 320-27.)

Dr. Reddy's moderate assessment on October 3, 2006, followed the decompression on the right. (Tr. at 441-48.) When considering the scant evidence of limitations together with Claimant's activities of daily living and opinion evidence, the undersigned finds that the ALJ's decision to assess mild limitations resulting from Claimant's bilateral carpal tunnel syndrome is supported by substantial evidence.

While Claimant takes issue with the Commissioner's framing of a durational requirement issue when the ALJ specifically did not state that as a reason for denying benefits, it is clear that the ALJ was mindful of such requirement in reaching his decision and that this Court may not ignore such requirement either. (Tr. at 21.) Claimant's condition was controlled by treatment, including the decompression surgeries, and therefore, Claimant was not under a disability for a period of one year as required by 42 U.S.C. § 423(d)(1)(A) and 20 C.F.R. §§ 404.1509, 416.909. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). Accordingly, the undersigned finds that the ALJ's assessment of the functional limitations resulting from Claimant's bilateral carpal tunnel syndrome is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 12.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 13.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen

days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Faber, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: February 1, 2010.

R. Clarke VanDervort
United States Magistrate Judge